IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| CHARLES P. LOSEE, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 08-00028-S-REB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY | ) | **AND ORDER** |
| ADMINISTRATION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Now pending before the Court is Charles P. Losee's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision to deny his claim for disability insurance benefits and supplemental security income payments. The action is brought pursuant to 42 U.S.C. 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

Charles P. Losee ("Petitioner") applied for disability insurance benefits and supplemental security income payments on December 31, 2004, alleging disability since December 6, 2004. (AR 17). Both claims were initially denied on February 23, 2005 and, again, on reconsideration on July 14, 2005. (AR 46 & 54). On July 29, 2005, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 41). On March 27, 2007, ALJ Carmen Graves held a hearing in Nashville, Tennessee, at which time Petitioner, represented by attorney

**MEMORANDUM DECISION AND ORDER - 1**

Daniel Bott, appeared and testified.  (AR 28).  A vocational expert, Gary K. Sturgill, also appeared and testified during the same March 27, 2007 hearing.

On July 19, 2007, the ALJ issued a decision denying Petitioner's claims.  (AR 17-25). Specifically, the ALJ found that Petitioner has not been under a disability within the meaning of the Social Security Act.  (AR 25).  Petitioner timely requested review from the Appeals Council on August 3, 2007.  (AR 9).  On November 28, 2007, the Appeals Council denied Petitioner's Request for Review of Hearing Decision/Order (AR 4), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing the ALJ erred by (1) failing to consider Petitioner's alleged mental impairments when determining his ability to perform basic work activities; (2) failing to provide specific, legitimate reasons for rejecting Petitioner's treating physicians' opinions; and (3) failing to analyze properly whether Petitioner's condition met or equaled a listing under the regulations governing impairments.  *See* Pl.'s Brief in Supp. of Pet. for Review, pp. 4-5 (Docket No. 11).  Petitioner therefore requests that this Court remand the action for proper consideration of the issues noted immediately above.

## II.  STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process.  20 C.F.R. §§ 404.1520, 416.920.  Notably, the second part of that process involves a determination of whether the claimant has a "severe impairment."  20 C.F.R. § 416.905(a).  If no "severe"

**MEMORANDUM DECISION AND ORDER - 2**

impairment is found, the claimant will be found not to be disabled for the purpose of conferring

benefits.  20 C.F.R. §§ 404.1520(c), 416.920(c).

      To be upheld, the Commissioner's decision must be supported by substantial evidence

and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981

F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  The

ALJ's findings as to any question of fact, if supported by substantial evidence, are conclusive.

42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).  In other words, if there

is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when

there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374

(9th Cir. 1979).

      "Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human

Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

      With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

**MEMORANDUM DECISION AND ORDER - 3**

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.    Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, disability benefits are denied. 20 C.F.R. § 404.1520(b). Here, the ALJ concluded that, while Petitioner engaged in substantial gainful activity in 2006 (*after* his alleged December 6, 2004 onset date), such work did not last six months and, therefore, was considered an unsuccessful work attempt. (AR 19). In other words, the ALJ found that Petitioner has not engaged in substantial gainful activity subsequent to his alleged onset date. *See id*.

**MEMORANDUM DECISION AND ORDER - 4**

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the answer is no, disability benefits are denied.  20 C.F.R. § 404.1520(c).  Here, the ALJ found that Petitioner had the following severe impairments: arachnoiditis and lumbar degenerative disc disease.  (AR 19).  In contrast, the ALJ considered Petitioner's alleged mental impairment to be "non-severe."  *See id.*; *see also* 20 C.F.R. § 404.1521.

The third step in the evaluation process requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).   If the claimant's impairment neither meets nor equals one of the impairments listed within the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ determined that Petitioner has the residual functional capacity to perform a limited range of light work – he can stand and/or walk for 4-6 hours; he can sit up to 8 hours; and he cannot perform repetitive lifting over 10 pounds, pushing or pulling over 10 pounds of force, or bending in an 8-hour work day.  (AR 19).  Due to these

**MEMORANDUM DECISION AND ORDER - 5**

limitations, the ALJ further determined that Petitioner is unable to perform any of his past relevant work.  (AR 24).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his/her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ found that Petitioner maintained the ability to perform a significant range of light/sedentary work found in significant numbers within the relevant national/regional economy, including mail clerk, cashier, counter clerk, assembler, miscellaneous production worker, and material moving worker.  (AR 24).  Therefore, based on Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that he was not under a disability as defined in the Social Security Act at any time through the date of the July 19, 2007 decision.  (AR 25).

**B.    Analysis**

Petitioner challenges the ALJ's denial of disability benefits in three separate ways.  First, Petitioner argues that the ALJ failed to consider properly his alleged mental impairment which, in turn, negatively affected the ALJ's subsequent residual functional capacity assessment.  *See* Pl.'s Brief in Supp. of Pet. for Review, pp. 5-10 (Docket No. 11).  Second, Petitioner argues that the ALJ neither properly considered nor properly applied the opinions of his medical providers. *See id*. at pp. 10-18.  Finally, Petitioner argues that the ALJ did not offer the requisite analysis supporting a determination that Petitioner's impairments did not meet, either singly or in combination, any of the listed, qualifying impairments.  *See id*. at pp. 18-21.

MEMORANDUM DECISION AND ORDER - 6

1.      Petitioner's Alleged Mental Impairment

Petitioner states in no uncertain terms that "the ALJ failed to consider any of [his] mental problems as 'severe' under the regulations despite the fact that [he] had been diagnosed by a licensed psychologist with situational depression, personality disorder, and psychological pain disorder." *See id*. at p. 4.  Petitioner premises this argument on the ALJ's apparent adoption (in both word and spirit)[1] of the February 16, 2005 Psychiatric Review Technique Form, completed by DDS physician, Dr. Maximo Callao.  *See id*. at p. 6.  While the similarities between the two findings, alone, are arguably insignificant for the purpose of Petitioner's appeal, it is interesting to mention (as Petitioner appropriately does here) that neither (1) Dr. Callao's February 16, 2005

---

[1]  On February 16, 2005, Dr. Callao opined:

> This claimant does not have allegations of a mental impairment. However, the evidence does indicate he is having some situational depression.  This is surrounding his recent accidents and strains to his back.  He is worried, sad, and frightened over his future.  He is having stress related to being laid off from work.  The claimant's ADLs are not limited by any mental impairment.  At this time he does not have a severe mental impairment.

(AR 200).  In comparison, on July 19, 2007, the ALJ similarly concluded:

> While the claimant did not allege disability due to any mental condition, the medical evidence of record indicated the claimant had some situational depression.  However, his symptoms were due to the state of his overall physical condition and uncertainty of his future, and not from an underlying mental condition.  The claimant received some medication years ago for depression but has [not] taken any medication or sought mental health treatment for more than one year. In addition, the level of his symptoms and/or activities of daily living were not such that, he was limited by any mental impairment; therefore, this is considered "non-severe."

(AR 19).

**MEMORANDUM DECISION AND ORDER - 7**

notes, nor (2) the subsequent July 6, 2005 review of the evidence within Petitioner's file

alongside the original February 16, 2005 assessment (AR 200), discusses Dr. Michael H.

McClay's May 10, 2005 Psychological Evaluation. (AR 224-227).[2]  Therefore, the argument

goes, to the extent the ALJ relied upon the DDS physicians' notes regarding Petitioner's medical

condition, her ultimate conclusion in that respect is incomplete because it necessarily ignored

pertinent medical records – namely, Dr. McClay's Psychological Evaluation.  *See* Pl.'s Brief in

Supp. of Pet. for Review, pp. 6-7 (Docket No. 11).  Petitioner's argument is not persuasive.

First, throughout the process, Petitioner did not consider his mental condition an

underlying basis for arguing disability; instead, the focus of his application and corresponding

reports was on his back problems.  While the record is not the model of clarity, it nonetheless

represents a window into Petitioner's subjective complaints when applying for disability

benefits.  In addition to what Petitioner offered by way of disabling conditions, it is important to

keep in mind what Petitioner did *not* reference as an illness, injury, or condition during these

relevant times.  For example:

- On December 16, 2004 (10 days after the alleged onset date), Petitioner completed a "Disability Report."  (AR 71-80).  In response to a question asking, "[w]hat are the illnesses, injuries or conditions that limit your ability to work?", Petitioner responded: "[A]rachnoiditis [sic]. There is severe chronic arachhoiditis [sic] with clumping of the nerve roots from L3-4 through below L5-S1 with the nerve roots thickened and becoming peripherally oriented adherent to the sac below L4-5.  This is a longstanding or cronic [sic] process.  Back problems, pain in legs, arachnoizitis [sic] disease."  (AR 72).

---

[2]  Dr. McClay's May 10, 2005 Psychological Evaluation took place after Dr. Callao's February 16, 2005 assessment, but before the July 6, 2005 review.  Because the latter review noted "no additional evidence" (*see* AR 200), Petitioner raises a potentially legitimate point, assuming the ALJ's decision rested only upon the original Psychiatric Review Technique and the later review notation.

**MEMORANDUM DECISION AND ORDER - 8**

- Also within Petitioner's December 16, 2004 Disability Report and in response to a question asking, "[h]ave you been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?", Petitioner responded: "No." (AR 74-75).

- On February 23, 2005, the Social Security Administration denied Petitioner's application for disability benefits. (AR 46). Therein, the Administration pointed out that "[d]isability has been alleged due to back problems." *See id.* There is no reference to Petitioner's alleged mental impairment.

- Although undated (but likely after March 1, 2005),[3] Petitioner completed another Disability Report. (AR 111-116). Therein, Petitioner acknowledged that he does not have any new physical or mental limitations and, likewise, had not seen and was not planning to see "a doctor/hospital/clinic or anyone else for emotional or mental problems that limit [his] ability to work." (AR 111 & 112).

- On April 21, 2005, Petitioner requested reconsideration of the Social Security Administration's February 23, 2005 determination. (AR 52). Within his "Request for Reconsideration," Petitioner stated: "I do not agree with the determination made on the above claim and request consideration. My reasons are: Spinal Disorder Arachnoiditis." *See id.* Again, there is no reference to Petitioner's alleged mental impairment.

- Although undated (but likely after April 21, 2005),[4] Petitioner completed another Disability Report. (AR 103-108). At that time, Petitioner stated that there had been a change in his condition since his last Disability Report, but referenced only that "[his] legs are getting worse, they feel hot." (AR 103). Tellingly, Petitioner indicated that he does not have any new physical or mental limitations and that he was not planning to see a medical provider for any emotional or mental problems. (AR 103 & 104).

---

[3] Within this Disability Report, Petitioner references the "[d]ate of Last Disability Report" as "01/27/2005." (AR 111). The record does not appear to contain a January 27, 2005 Disability Report. Regardless, Petitioner references a change in his alleged illness since the referenced January 2005 Disability Report as of approximately March 1, 2005. *See id.* Thus, it appears reasonable to assume that this Disability Report was executed after March 1, 2005.

[4] Within this Disability Report, Petitioner references the "[d]ate of Last Disability Report" as "04/21/2005." (AR 103). It is possible that the previously-referenced Disability Report represents the April 21, 2005 report, however, given that neither is dated, it remains unknown. Regardless, it appears reasonable to assume that this Disability report was executed after April 21, 2005.

**MEMORANDUM DECISION AND ORDER - 9**

- On July 14, 2005, the Social Security Administration denied Petitioner's April 21, 2005 reconsideration efforts, focusing on the fact that "[d]isability has been alleged due to Arachnoiditis." (AR 54).

- On July 28, 2005, Petitioner completed another Disability Report. (AR 117-123).[5]  While stating that his legs continue to get worse and feel hot, Petitioner again reported that he has no new physical or mental limitations, had not seen a medical provider for any emotional or mental problem, and was not planning to see a medical provider for such conditions. (AR 117 & 118). Along these lines, when listing his doctors and medications, Petitioner referenced only Dr. Douglas Smith and his prescribed pain medication. (AR 118 & 120). Although Dr. McClay had already performed his Psychological Evaluation by this time, Petitioner provides no mention of Dr. McClay at all, makes no reference to any associated medications he is taking, and makes no reference to any mental impairment(s) or condition(s) whatsoever.

Consistent with Social Security Ruling 96-8P, "[t]he adjudicator must consider all *allegations* of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess [residual functional capacity]." *See* SSR 96-8P (emphasis added).  Here, with respect to his disability claim, Petitioner focused on his back condition to the exclusion of any alleged mental impairment.  The ALJ was thus justified in concluding that Petitioner "did not allege disability due to any mental condition . . . ." (AR 19).

Second, although the DDS physicians did not appear to take into account Dr. McClay's Psychological Evaluation specifically, the ALJ did, in fact, consider Petitioner's alleged mental impairment when later assessing his residual functional capacity.  (AR 22); *see also* SSR 96-8P ("In assessing [residual functional capacity], the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").  In doing so, however, Petitioner now argues that the ALJ did not lend as much weight to Dr.

---

[5]  For completeness sake, Petitioner's current counsel, Bradford D. Myler & Associates, completed the Disability Report on Petitioner's behalf.  (AR 123).

**MEMORANDUM DECISION AND ORDER - 10**

McClay's Psychological Evaluation as she must.  *See* Pl.'s Brief in Supp. of Pet. for Review, pp.

7-8 (Docket No. 11).  However, the Court concludes based upon the record and considering the

sometimes conflicting evidence contained therein, the ALJ's conclusion in this respect is

supported by substantial evidence.

Preliminarily, it should be noted that diagnoses of psychological mental impairments are

largely dependent upon patients' subjective complaints.   Here, Petitioner relies upon Dr.

McClay's May 10, 2005 Psychological Evaluation (AR 224-227) as support for his claim that he

has mental impairments that affect his ability to perform basic work activities.  *See* Pl.'s Brief in

Supp. of Pet. for Review, pp. 6-7 (Docket No. 11).  However, Dr. McClay's evaluation was

premised upon the SF-36 questionnaire, a self-administered, thirty-six-item, self-report scale,

measuring a participant's supposed health status.  *See id.* at fn. 1, p. 6.  If a participant's

credibility is at issue, the results of the SF-36 questionnaire may be affected.  In this respect, Dr.

McClay determined:

> The patient's responses to the validity items of the [MMPI-2] test
> suggest that he answered it in an unrealistically positive light,
> suggesting extreme moral virtues.  Typically, this approach suggests
> a naive or unsophisticated self-image.  The test is marginally valid,
> it is interpretable, but is a minimal estimate of any pathology
> reported.

(AR 225).  The ALJ considered the results of Petitioner's mental examinations to be influenced

by Petitioner's self-serving contributions to the questionnaire.  (AR22).  As a consequence,

Petitioner's Symptom Magnification Syndrome provided the ALJ with helpful context for Dr.

McClay's evaluation.

Moreover, Dr. McClay's reference to "individuals with this profile" when making his

recommendation is not an individualized assessment of the severity of Petitioner's mental state;

**MEMORANDUM DECISION AND ORDER - 11**

still, even if it is, it is not uncontradicted.  First, as highlighted above, Petitioner's own Disability

Reports (before and after Dr. McClay's Psychological Evaluation) fail to mention any mental

impairments that may represent work-related functional limitations or any medication for his

alleged depression/anxiety.  *See supra* at pp. 8-10.  Second, when Petitioner actually discusses

his mental condition with his medical providers,[6] it is in a situational context and not a function

of any underlying, chronic illness.  *See, e.g.*, *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir.

2006) (upholding ALJ's decision that appellant is not disabled under Social Security Act due, in

part, to appellant's apparent situational depression).[7]  Third, DDS physician, Dr. Callao,

---

[6]  The Court cannot agree with Petitioner's impression that the record "includes *many* notes . . . recognizing [Petitioner's] depression, monitoring the depression, and treating the depression."  *See* Pl.'s Brief in Supp. of Pet. for Review, p. 9 (Docket No. 11) (emphasis added). In reality, the record is overwhelmingly dominated by references to Petitioner's back condition and, only occasionally, Petitioner's alleged depression.

[7]  For example, prior to December 6, 2004 (the alleged onset date), there is no reference in the record to Petitioner's alleged mental impairment(s).  (AR 142-145).  Eight days later, on December 14, 2004, Petitioner complains of "depression . . . sensations of hopelessness . . . worrying . . . [and being] very sad and frightened over his future" while at the same time complaining that "[h]is employer . . . placed him on inactive status without firing him . . . [and] [h]e is unable to apply for Workman's Comp benefits as a result." (AR 141).  Even though the December 14, 2004 treatment notes indicate that Petitioner "[w]ill follow up in two weeks for re-evaluation of depression" (*see id.*), the next relevant notation is dated nearly three months later on March 22, 2005, without any intervening reevaluation.  (AR 215).  At that time, Petitioner requested "something to help with his depression" and that "[h]e is extremely down" before mentioning that "[h]e has a back injury that is inoperable" yet "[h]e is waiting for possible improvement of his finances where he can afford to take the surgical option."  (AR 215). Similarly, Petitioner's August 11, 2005 treatment notes indicate that he requested medicine for depression while "[h]e's currently fighting with the workman's comp. organizations to obtain possible referral for surgery . . . [;] and getting quite depressed not being able to work and assist in supporting his family."  (AR 215).  Ten days later, on August 25, 2005, Petitioner reported that he (1) feels less depressed, (2) is tolerating the medication well, (3) has no side effects from the medication, and (4) is not requesting additional medication.  (AR 212).  Between August 25, 2005 and the March 27, 2007 hearing before the ALJ, there are no references in the record to Petitioner's alleged mental impairment(s).

**MEMORANDUM DECISION AND ORDER - 12**

acknowledged Petitioner's affective disorder/depression; however she found that it did not contribute to any (1) restrictions of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence, or pace, and (4) episodes of decompensation.  (AR 198).  Fourth, in late 2006, Petitioner was approved to perform light work at the Salvation Army.  (AR 252); *see also infra* at p. 16.  Yet, Petitioner "turned it down"; not because of any physical or mental impairment, but because it was a sixty-mile commute and too far away.  (AR 258 & 259).

Tasked with resolving the ambiguities and contradictions in the record, the ALJ found that Petitioner's depression was situational and non-severe.  This conclusion, coupled with its application to Petitioner's residual functional capacity analysis, while potentially at odds with another's interpretation of the same record, is nonetheless supported by specific and legitimate reasons consistent with evidence in the record.  As a result, the ALJ's decision will not be disturbed here.

2.      The Opinions of Petitioner's Treating Physician, Dr. Douglas Smith

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight.  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual."  *Id.*  However, a treating physician's opinion is not necessarily conclusive.  *Id.* at 762.  The treating physician's opinion may be disregarded by the ALJ if she sets forth "specific, legitimate, reasons for doing so," as long as the decision is based on "substantial evidence," and the reasons for rejecting the physician's opinions are "clear and convincing."  *Id.* (citations omitted); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th

**MEMORANDUM DECISION AND ORDER - 13**

Cir. 2003) ("Because [other] evidence contradicts [treating physician's] conclusions, the ALJ need only have rejected [treating physician's] conclusions for specific and legitimate reasons supported by substantial evidence in the record.")  A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinion is sufficient reason for rejecting that opinion.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In determining that Dr. Smith's opinions are not persuasive toward revealing Petitioner's proper residual functional capacity, the ALJ concluded that Dr. Smith's assessment is incomplete and conflicts with both his own findings, as well as other doctors' opinions.  (AR 22-23).  Petitioner naturally takes issue with the ALJ's conclusion in this respect, arguing the ALJ erred by not granting the opinions of Dr. Smith controlling (or even persuasive) weight.  *See* Pl.'s Brief in Supp. of Pet. for Review, p. 14 (Docket No. 11).

While it is true that Dr. Smith was one of Petitioner's treating physicians, Petitioner fails to clearly identify the extent to which the ALJ's residual functional capacity assessment improperly deviates from Dr. Smith's findings.  Indeed, there is no dispute that Petitioner suffers from a physical impairment related to his back, and that such an impairment is severe; both Dr. Smith and the ALJ agree on this discrete point.  The disagreement, however, presents itself when discussing Petitioner's corresponding physical limitations.  On the one hand, Dr. Smith appears to opine that Petitioner cannot work.  As indicated by her decision, the ALJ thinks otherwise.

Petitioner's briefing devotes multiple pages to Dr. Smith's clinical findings without pinpointing which of Dr. Smith's opinions relating specifically to Petitioner's physical abilities should be lent controlling weight.  *See id.* at pp. 11-18.  Presumably, Petitioner relies upon Dr. Smith's June 28, 2005 letter to the Idaho Commerce and Labor as the basis for challenging the

**MEMORANDUM DECISION AND ORDER - 14**

ALJ's residual functional capacity assessment.  (AR 150).  Within that letter, Dr. Smith, a

neurosurgeon, apparently believed that Petitioner (1) could lift between 25-30 pounds; (2) could

sit and stand approximately 30 minutes; (3) could walk around a grocery store, but is "certainly

not able to go for walks down the street"; and (4) could not be employed given his walking

tolerance.  *See id.*  Given Dr. Smith's subsequent findings and comments, coupled with the

opinions of other treating/examining doctors, the ALJ was not persuaded by the content of Dr.

Smith's June 28, 2005 letter.  (AR 19-23).  Most notably, the ALJ pointed out the following

evidence in the record:

- Nearly a week after his June 28, 2005 letter, Dr. Smith relayed Petitioner's "Functional Tolerance" as a self-reported ability to sit through a movie so long as Petitioner "shuffles in his chair quite a lot."  (AR 222);

- On May 10, 2006, Dr. Smith acknowledged that there were issues of Petitioner's history that "[he] did not know" and that he had not reviewed either the imaging that Dr. Montalbano completed or the neuropsychology report from Dr. McClay.  (AR 221) Also at this time, Dr. Smith appeared to acknowledge that, in light of Petitioner's now-complete record, he believed from a medical standpoint that Petitioner's back surgery was no longer an issue worth pursuing.  *See id.*;[8]

---

[8]  The Court agrees with Petitioner that Dr. Smith's May 10, 2006 letter on this latter point is not entirely clear.  There, Dr. Smith stated: "With these limitations, I do not believe that from a medical standpoint it is worth pursuing further.  The review appears to make a careful argument."  (AR 221).  What does "it" mean?  The ALJ understood the word to mean the surgery that Dr. Smith had been advocating for nearly a year up to that point.  Petitioner disagrees, arguing that such an interpretation ignores a July 8, 2005 notation from Dr. Smith indicating that "[Petitioner] has been evaluated by Dr. McClay and Dr. Montalbano."  *See* Pl.'s Brief in Supp. of Pet. for Review, p. 16 (Docket No. 11) (citing AR 222).  Petitioner's argument is not persuasive.  First, there is no evidence in the record that Dr. Smith ever *reviewed* either Dr. Montalbano's or Dr. McClay's evaluations before May 10, 2006.  Second, Petitioner offers no alternate interpretation to the meaning of the at-issue sentence contained within Dr. Smith's May 10, 2006 letter.  Because the ALJ's interpretation of that sentence is not inconsistent with the record, it will be afforded the appropriate weight and consideration.

**MEMORANDUM DECISION AND ORDER - 15**

- On October 9, 2006, Dr. Kenneth A. Orchard of Concentra Medical Centers in Tennessee indicated that Petitioner was approved to *return* to work with the following restrictions: (1) no repetitive lifting over 10 pounds; (2) no bending greater than 0 timer per hour; and (3) no pushing and/or pulling over 10 pounds of force. (AR 239). At that time, Petitioner elected and scheduled physical therapy and was also given a written prescription. *See id.*;

- On October 24, 2006, Dr. Keith Abney of Concentra Medical Centers in Tennessee again indicated that Petitioner was approved to *return* to work with the following restrictions: (1) no repetitive lifting over 10 pounds; (2) no bending greater than 0 timer per hour; and (3) no pushing and/or pulling over 10 pounds of force. (AR 237).

- On November 2, 2006, Dr. Robert Dimick approved Petitioner for a light duty job offer at the Salvation Army. (AR 252). The job involved registering applicants and taking donations. *See id*. Petitioner rejected the offer because it was too far away. (AR 258 & 259).

- On December 6, 2006, Dr. Dimick treated Petitioner for his neck, arm, and lower back pain. Dr. Dimick's treatment notes offer the latest insight into Petitioner's condition, work-related limitations, and ability to return to work, commenting:

  > A lengthy discussion was held with [Petitioner and wife]. He does have a very involved lumbar spine and has very definite, very significant pathology. However, studying this very nice gentleman as closely as I can, there is a definite lack of objective reproducible musculoskeletal and neurologic findings to indicate the events at work 10/9/06 resulted in a permanent aggravation of preexisting conditions or the emergence of new pathology that is clinically significant on a permanent basis. [Petitioner and wife] grudgingly accepted this evaluation. . . . . They appreciated understanding of the frank feedback and recommendations. He accepts return to his former level of employment without restrictions.

  (AR 218-220); and

- In response to a request from the Tennessee Office of Disability Adjudication and Review to perform a functional capacity evaluation, Dr. Smith declined, stating in a March 5, 2007 letter: "Insofar as I have not seen [Petitioner] since July 2005, I cannot complete the functional capacity evaluation as requested.

**MEMORANDUM DECISION AND ORDER - 16**

> I would recommend that [Petitioner] seek evaluation by a physical medicine and rehabilitation specialist in that regard." (AR 216).

The point here is that the objective medical evidence offered by the overall balance of Petitioner's treating and examining physicians eventually evolved to contemplate Petitioner's return to work in some capacity.[9] Such substantial evidence offers a clear and convincing explanation as to why the ALJ gave little to no weight to Dr. Smith's opinions when it came to commenting on Petitioner's physical limitations.[10] This is not to say that this Court conclusively finds Petitioner not to be disabled under the applicable rules and regulations; to be sure, Petitioner appropriately identifies conflicting evidence in support of his position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, it is

---

[9] It is important to point out that the State agency physician determined Petitioner could (1) occasionally lift up to 20 pounds, (2) frequently lift up to 10 pounds, (3) stand and/or walk about 6 hours in an 8-hour workday, (4) sit about 6 hours in an 8-hour workday, and (4) perform unlimited push/pull activities. (AR 180). The State agency physician further determined that Petitioner could (1) occasionally climb ramps, stairs, ladders, ropes, and/or scaffolds, (2) frequently balance, (3) occasionally stoop, (4) frequently kneel, (5) occasionally crouch, and (6) frequently crawl. (AR 181). Still, the ALJ rejected these findings, reasoning: "[M]edical evidence received at the hearing level shows the claimant more limited than determined by the non-examining, non-treating State agency medical expert." (AR 23).

[10] Regarding those opinions *not* offered by Dr. Smith, Petitioner attempts to raise credibility issues by stating that "the Court should keep in mind that the opinions of both Dr. Dimick and Dr. Montalbano were commissioned by state agencies in Worker's compensation proceedings, and the medical evaluations of both physicians must be taken in that context." *See* Pl.'s Brief in Supp. of Pet. for Review, p. 18 (Docket No. 11); *see also* Pl.'s Reply Brief, p. 8 (Docket No. 13). Petitioner's argument in this respect is misplaced. While Dr. Dimick and Dr. Montalbano may have been retained by interests investigating Petitioner's claims, that, by itself, does not operate as a *de facto* challenge to the validity of their opinions. There is no separate challenge to the accuracy of the tests performed or the conclusions that either reach. In short, the Court is not in a position to look behind Dr. Dimick's or Dr. Montalbano's motivations when commenting on Petitioner's conditions. Instead, their opinions must be considered hand-in-hand with those of Petitioner's other medical providers, including Dr. Smith.

**MEMORANDUM DECISION AND ORDER - 17**

clear that the ALJ's decision to doubt Dr. Smith is not without appropriate reasons for doing so. As required by controlling law, the ALJ will not be second-guessed here.  *See Batson v. Comm'r of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." (internal citations omitted)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")  Thus, the Court will not substitute its judgment when the evidence in the record can be applied to support the ALJ's findings.

     3.     <u>Whether Petitioner's Impairments Met or Equaled a Listed Impairment</u>

Petitioner finally argues that the ALJ failed to offer the requisite analysis when considering whether Petitioner's alleged impairments met or equaled a listed impairment for disability determination purposes.  *See* Pl.'s Brief in Supp. of Pet. for Review, pp. 18-21 (Docket No. 11).  As discussed above, an ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the impairments meet or equal a listed impairment, he or she is deemed disabled.  *Id*.; *see also supra* at p. 5.

An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment."  *See* SSR 83-19; *see also* 20 C.F.R. § 404.1525.  An impairment equals a listed impairment only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment.  *Tackett*, 190 F.3d at 1099.

**MEMORANDUM DECISION AND ORDER - 18**

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment" does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*, 236 F.3d at 512.

Here, the ALJ recognized Petitioner's arachnoiditis and lumbar degenerative disc disease as constituting severe impairments, but ultimately concluded they were "not severe enough, either singly or in combination, to meet or medically equal the requirements set forth in the Listing of Impairments." *See supra* at p. 5 (citing AR 19).  That was the extent of the ALJ's analysis.[11]  Not only did the ALJ fail to contrast the evidence in the record with the relevant, listed impairment criteria for disability determination purposes, she did not even mention Social Security Listing 1.04, which specifically deals with disorders of the spine, including arachnoiditis and degenerative disc disease.

Listing 1.04A requires that the following criteria be met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With . . . [e]vidence of nerve root compression characterized by neuro-

---

[11]  After making this statement, the ALJ immediately went on to discuss the merits of Petitioner's alleged disability due to any mental condition.  (AR 19).  This discussion, however, omitted any mention, let alone analysis, of Petitioner's arachnoiditis and lumbar degenerative disc disease within the parameters of a listed impairment. *See id.*  Following this single paragraph, the ALJ turned to the issue of Petitioner's residual functional capacity.  (AR 19-23).

**MEMORANDUM DECISION AND ORDER - 19**

> anatomic distribution of pain, limitation of motion of the spine, motor
> loss (atrophy with associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there is involvement of
> the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  Respondent argues that "Petitioner's findings did

not meet or equal Listing 1.04A," citing to Drs. Montalbano's, Smith's, and Dimick's treatment

notes.  *See* Respt's Brief, p. 10 (Docket No. 12).  However, this Court is to review only the

reasons provided by the ALJ in their disability determination; it may not affirm the ALJ on a

ground upon which she did not rely.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing

*Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  In this respect, it is difficult to identify

the actual rationale supporting the ALJ's conclusion that Petitioner's impairments do not meet a

listed impairment.

The ALJ's determination is not so much an analysis of the evidence in the record, but

rather a regurgitation of each medical provider's findings.  At times, these findings alone appear

to support the ALJ's conclusion regarding the third step in the sequential analysis.  For example,

the ALJ's decision does, in fact, incorporate Dr. Montalbano's opinion that:

- "[Petitioner's] gait and station were void of any antalgic[12] or myelopathic[13] component";

- "[M]uscle strength in all four extremities was 5/5";

- "[A]rachnoiditis appeared asymptomatic"; and

- "[N]o instability of either the cervical or lumbar spine and no evidence of an

---

[12] An antalgic component is characterized by a reduced response to painful stimuli.  *See* Steadman's Medical Dictionary, 27th ed. (2000).

[13] Myelopathy is a disorder of the spinal cord.  *See* Steadman's Medical Dictionary, 27th ed. (2000).

**MEMORANDUM DECISION AND ORDER - 20**

acute disc herniation or any acute process."

(AR 21).  In contrast, the ALJ's references to Dr. Dimick's opinions are less clear on this

discrete issue.  For example, the ALJ highlighted the following Dr. Dimick findings:

- "On physical examination, there was reduced range of motion . . . .";

- "Deep tendon reflexes of the bilateral patellar and Achilles were completely absent despite facilitation";[14]

- "Straight leg raising of the right knee at full extension increased muscle-type back pain . . . .";

- "Nerve conduction studies . . . were consistent with a chronic, ongoing left L5-S1 radiculopathy,[15] with no definite evidence of a right S1 radiculopathy; and mild generalized motor polyneuropathy";[16] and

- "Updated diagnostic testing of the lumbar spine showed central stenosis with bilateral foraminal narrowing at L1-2, L3-4, L4-5, and L5-S1; as well as a shallow left disc protrusion mildly compressing the exiting left S1 nerve root; and chronic arachnoiditis at L3-4 through L5-S1."

(AR 21 & 22).

It is not this Court's function to resolve definitively this issue; rather, it is tasked with

reviewing the basis of the ALJ's decision.  While it appears Petitioner likely has not met all the

criteria of Listing 1.04A, it cannot be said that the ALJ actually *evaluated* the record as to this

issue or, even if she did, what that evaluation even entailed.  In other words, this Court is unable

---

[14]  Facilitation is the enhancement or reinforcement of a reflex or other nervous activity by the arrival at the reflex center of other excitatory impulses.  *See* Steadman's Medical Dictionary, 27th ed. (2000).

[15]  Radiculopathy is a disorder of the spinal nerve roots.  *See* Steadman's Medical Dictionary, 27th ed. (2000).

[16]  Polyneuropathy is a disease process involving a number of peripheral nerves.  *See* Steadman's Medical Dictionary, 27th ed. (2000).

**MEMORANDUM DECISION AND ORDER - 21**

to deduce the actual basis for the ALJ's step-three determination and, therefore, must remand the action to allow the ALJ the opportunity not only to consider the evidence supporting her findings at this stage of the analysis, but also to incorporate properly her evaluation of that evidence in any subsequent decision.[17]

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

As to the ALJ's determination regarding Petitioner's alleged mental impairment and her consideration of Dr. Smith's opinions concerning Petitioner's alleged physical condition, the evidence upon which the ALJ relied can reasonably and rationally support her well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ in support of her determination that Petitioner's impairments do not rise to the level of a listed impairment are not sufficiently specific and, therefore, not supported by substantial evidence.  It is for this reason that it is necessary to remand this action for further consideration.

---

[17]  The Court understands that, in the event the ALJ finds Petitioner's impairments to meet or equal a listed impairment, disability benefits will be awarded.  However, if, following remand, the ALJ supports her original determination with substantial evidence consistent with these findings, the sequential process proceeds.  It is with this latter consideration in mind that the Court considers all of Petitioner's other objections to the ALJ's July 19, 2007 decision in one Memorandum Decision and Order.  *See supra* at pp. 6-18.

**MEMORANDUM DECISION AND ORDER - 22**

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The

Commissioner's decision that Petitioner's arachnoiditis and lumbar degenerative disc disease are

not severe enough, either singly or in combination, to meet or medically equal a listed

impairment is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C.

§ 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See*

*Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).  The Commissioner is instructed to address

whether Petitioner's impairments meet or medically equal a listed impairment within sixty (60)

days of this Memorandum Decision and Order.



DATED:  **November 24, 2008**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**